UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

MANKINS FAMILY LLC, an Oregon                                    3:20-cv-778-JR
domestic limited liability company, and
PACIFIC CITY INN, INCORPORATED, an
Oregon domestic corporation,                                     OPINION & ORDER

                                   Plaintiffs,

            v.

TILLAMOOK COUNTY, OREGON, a
political subdivision of the state of Oregon,

                                   Defendant.

RUSSO, Magistrate Judge:

        Plaintiffs Mankins Family LLC and Pacific City Inc, Inc. bring this action alleging

defendant Tillamook County, Oregon, in response to a public health emergency, violated their

federal and state constitutional rights to equal protection, substantive and procedural due process,

and taking property without just compensation.   Defendant moves for summary judgment.   For

the reasons stated below, the motion is granted in part and denied in part.

Page 1 -OPINION & ORDER

BACKGROUND

Plaintiff Mankins Family, LLC operates the Anchorage Motel in an unincorporated area of Tillamook County, Oregon.   Plaintiff Pacific City Inn, Inc. operates the Pacific City Inn also in an unincorporated area of Tillamook County.

On March 8, 2020, Oregon Governor Kate Brown declared an emergency under Or. Rev. Stat. § 401.165 in response to the COVID-19 pandemic.   On March 12, 2020, Governor Brown prohibited gatherings of 250 or more people and closed public schools.   Defendant Tillamook County declared its own local state of emergency on March 14, 2020 pursuant to Or. Rev. Stat. § 401.309.

On March 22, 2020, Tillamook County passed a resolution closing various public facilities and limiting transient lodging facilities to essential personnel where lodging in Tillamook County is necessary for essential work.   On March 23, 2020, Governor Brown issued an executive order limiting Oregonians to essential travel.   On April 17, 2020, Tillamook County extended the lodging restriction and other restrictions until May 31, 2020.

On May 6, 2020, the City of Tillamook, inconsistent with the County's resolution, allowed the three lodging facilities within city limits to fully reopen.   The County took no action against the City's lodging facilities when they reopened.   On May 13, 2020, the County fully reopened transient lodging beginning May 29, 2020.   On May 14, 2020, Governor Brown rescinded the travel restrictions and established a phased-in regional approach to reopening.

Plaintiffs filed this action on May 13, 2020, asserting: unlawful takings under the Fifth Amendment to the United States Constitution and the Oregon Constitution Article I, Section 18; violation of their equal protection rights under the Fourteenth Amendment to the United States

Page 2 -OPINION & ORDER

Constitution; and violation of their substantive and procedural due process rights under the Fourteenth Amendment to the United States Constitution.

DISCUSSION

Defendant moves for summary judgment as to all of plaintiffs' claims. Plaintiffs concede their takings claims. Accordingly, defendant's motion for summary judgment is granted as to plaintiffs' first and second counts of the first claim for relief as well as the second claim for relief.

A.    Equal Protection

Plaintiffs seek damages, declaratory relief, and injunctive relief against the County pursuant to 42 U.S.C. § 1983 for alleged violations of their right to equal protection. Plaintiffs assert their County licensed lodging facilities were restricted from opening to non-essential travelers while County licensed facilities within the City of Tillamook were not restricted, and there did not exist any rational basis for the distinction. Accordingly, plaintiffs assert their right to equal protection was violated under a "class of one" theory.

The Equal Protection Clause of the Fourteenth Amendment protects a "class of one" where plaintiffs allege, they have been intentionally treated differently from others similarly situated and there exists no rational basis for the different treatment. Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000). Plaintiffs allege the County declined to penalize the lodging facilities in the City of Tillamook following the City's passage of a resolution allowing the opening such facilities within its jurisdiction while plaintiffs were threatened with penalties after May 6, 2020.

Page 3 -OPINION & ORDER

Before addressing whether the County arbitrarily discriminated against plaintiffs, it is important to note that plaintiffs do not represent a true "class of one" but rather a group of lodging facilities operated in Tillamook County outside of the City of Tillamook. Nonetheless, other than the City's own separate regulation, the County offers no rationale for any distinction between the two groups.[1] While there may be some forms of government action, which by their nature, involve discretionary decisionmaking where it is permissible to treat similarly situated persons differently, e.g., issuance of speeding tickets, where the government exercises the power to license, there is a crucial difference in exercising such discretion. See Engquist v. Oregon Dep't of Agr., 553 U.S. 591, 598 (2008) (there is a crucial difference, with respect to constitutional analysis, between the government exercising the power to regulate or license, as lawmaker, and the government acting as proprietor, to manage internal operations); 603-04 (the rule that people should be treated alike, under like circumstances and conditions is not violated when one person is treated differently from others where it is an accepted consequence of the discretion granted).

The more pressing issues are whether the City lodging facilities are similarly situated to the plaintiffs and whether the County intentionally discriminated between the two. As noted above, the City lodging facilities were reopened pursuant to a City resolution to which plaintiffs were not subject. However, the County had separate jurisdiction to enforce its resolutions and offers no evidence that the City's action prevented it from enforcing its resolution. Nonetheless, the record is devoid of any evidence that the County sought to penalize any lodging facility

---

[1] The County asserts it is rational to continue to restrict 88% of lodging facilities outside the City of Tillamook even if the 12% percent of County lodging facilities in the City of Tillamook reopened because that helped mitigate the spread of COVID-19, but it does not offer a rationale for its distinction between City lodging and other County

within its jurisdiction.   Because there is no evidence that the County restrictions were rendered unenforceable by the City's resolution, lodging facilities within the City of Tillamook were similarly situated to lodging facilities outside the City.

Plaintiffs assert that after May 6, 2020, when they sought to reopen, they were threatened with prosecution by the County.   However, the declarations offered in support of this statement generally note only that plaintiffs were aware that City lodging facilities reopened without any action taken by the County.   See, e.g., Declaration of Jennifer Mankins (ECF 24) at ¶ 29.   The general manager of the Pacific Inn, Geoff Williams, asserts "[t]he County did, however, make it clear that the Pacific City Inn could not reopen after May 6, 2020."   Declaration of Geoff Williams (ECF 26) at ¶ 23.   Williams does not articulate how that was made clear beyond the County resolution itself or how any such demonstration would indicate a threat of prosecution.

Nonetheless, plaintiffs present evidence from which a trier of fact could conclude that the County intended to enforce the restrictions, after May 6, 2020, only against County lodging facilities outside the City of Tillamook.   Plaintiffs note that Tillamook County Environmental Health Program Manager, Annette Pampush published an email on May 7, 2020, clarifying:

> The Board of County Commissioners has extended emergency resolution 20-008 which states that all restaurants, pools/spas, and lodging facilities within Tillamook County remain closed until May 31st.
>
> The Tillamook City Council voted to allow reopening of lodging facilities WITHIN THE CITY of TILLAMOOK only on May 6th, with the exception that all persons must be in compliance with physical distancing requirements and other restrictions as stated in the State of Oregon Governors Executive Order 20-12.

Declaration of Jennifer Mankins (ECF 24) at Ex 1 (emphasis in original).

---

lodging for this purpose.   The County specifically notes that it did not condone the City's reopening and even

Although there is no evidence that the County undertook to enforce the restrictions against non-City lodging facilities, there is evidence to suggest, beyond speculation, that the County intended its resolution to apply to non-City lodging only.   Plaintiffs continued to comply while lodging facilities in the City of Tillamook did not.[2]   Accordingly, there is evidence from which a trier of fact could conclude the County intentionally treated plaintiffs differently from others similarly situated.   The only rationale offered, based on the record at this stage, is the City's separate resolution reopening lodging facilities, but there is no evidence as to why such resolution prevented the County from enforcing its own resolution.   Although the County asserts closing the large majority of lodging facilities in the County helped mitigate the spread of COVID-19, they offer no rationale as to why only non-City of Tillamook lodging facilities must bear this burden.   Accordingly, summary judgment is denied as to plaintiffs' equal protection claim at this time.[3]

B.      Substantive Due Process

Plaintiffs assert they "have a fundamental right to pursue their chosen field of employment, they have a fundamental right to work for a living, and they have a fundamental right to provide lodging services to the general public."   Response (ECF 21) at p. 25. Accordingly, plaintiffs argue lifting restrictions for City of Tillamook lodging facilities only on May 7, 2020 denied them substantive due process via arbitrary conduct that failed to advance a

---

considered filing an injunction to prevent it.   Declaration of Elizabeth Jones (ECF 17) at Ex. 7, pp. 6-7).
[2] Although plaintiffs present no evidence of threat of penalties after May 6, 2020, plaintiffs do note that they were contacted in early April by Sarah Absher, Director of the Tillamook County Department of Community Development, and told that if they opened they would be fined and possibly charged criminally.   Declaration of Jennifer Mankins (ECF 24) at ¶ 22.   This alleged threat along with the May 7, 2020 email is sufficient to raise an issue of fact as to whether the County treated plaintiffs differently from the City lodging facilities.
[3] Because this claim remains, the Court declines to rule on the County's motion to deny plaintiffs' request for injunctive relief.

legitimate government interest.[4]

The Fourteenth Amendment's Due Process Clause states, "[Nor] shall any State deprive any person of life, liberty, or property, without due process of law." The substantive component of this clause bars certain government actions regardless of the fairness of the procedures used to implement them. Daniels v. Williams, 474 U.S. 327, 331, (1986). This component serves to prevent governmental power from being used for purposes of oppression. Id. at 331–32. The Due Process Clause prohibits restraints on liberty that are arbitrary and purposeless. Poe v. Ullman, 367 U.S. 497, 543 (1961). A claim under this clause is "cognizable only if there is a recognized liberty or property interest at stake." Schroeder v. McDonald, 55 F.3d 454, 462 (9th Cir. 1995); see also Wedges/Ledges of Cal., Inc. v. City of Phoenix, 24 F.3d 56, 62 (9th Cir. 1994). The clause specially protects those fundamental rights and liberties which are, objectively, deeply rooted in history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed. Washington v. Glucksberg, 521 U.S. 702, 720–21 (1997).

The Due Process Clause includes a generalized due process right to choose one's field of private employment. Conn v. Gabbert, 526 U.S. 286, 291–92 (1999). Nonetheless, the right to pursue work is not a fundamental right and is subject to reasonable government regulation. Id. at 292. Accordingly, restrictions in this area are reviewed for whether the government could have had a legitimate reason for acting as it did. Wedges/Ledges of California, Inc. v. City of Phoenix, Ariz., 24 F.3d 56, 66 (9th Cir. 1994).

Here, plaintiffs fail to establish an issue of fact as to whether the County deprived them

---

[4] Plaintiffs also argue the restrictions themselves, even if enforced County-wide, were arbitrary because the State of

of the ability to pursue their chosen field of employment or that the County could not have had a legitimate reason for acting as it did. Not only did the regulations at issue permit the continued operation of plaintiffs' chosen field of work in the lodging business, albeit restricted to only certain current lodgers on the date the restriction went in to effect and certain essential personnel, the regulations were temporary.  Even assuming there is a constitutional right to pursue your chosen field in any location within the regulating entity's jurisdiction (e.g., outside of the City of Tillamook but within Tillamook County), and to any and all potential patrons, the temporary nature of the restrictions does not establish an undue interference on that right.  See Conn, 526 U.S. at 292 (right protects against "a complete prohibition of the right to engage in a calling and not against brief interruptions to that pursuit); Wedges/Ledges of California, Inc. at 65 (the fact that the City temporarily banned one particular type of amusement game does not in itself establish that the City unduly interfered with either the game operators' or manufacturer's ability to pursue their livelihood in the amusement game industry); FDIC v. Henderson, 940 F.2d 465, 474 (9th Cir. 1991) (holding that a former bank president who alleged that he was wrongfully discharged as a result of a state banking official's actions must show that the acts left him unable to pursue any comparable job in his chosen field).

Moreover, the County could have had a legitimate reason for the restrictions on lodging. The record establishes that the World Health Organization considers COVID-19 a global health pandemic and COVID-19 spreads person-to-person through close personal contact.  (Governor's Executive Order No. 20-25 at p. 3 attached Declaration of Elizabeth Jones, at Ex. 3, p. 2) (ECF 17-1).  State and local officials advise that the virus is circulating in the community and physical

---

Oregon did not impose such restrictions nor did the Centers for Disease Control.

distancing along with stay home orders have helped slow the spread.  Id.  Accordingly, restrictions on lodging that help reduce tourism and contact could also conceivably reduce the spread of the disease.   As another court noted:

> physical distancing measures like California's Stay-at-Home Order are critical to slowing down the spread of the virus … rendering the measure substantially related to public health…. Plaintiffs' claim that the Stay-at-Home Order is out of touch with "scientific data" because "[a] variety of studies are showing that infection rates and hospitalization rates around the country and in California are much lower than originally predicted" (see App. at 4–5) fails to account for the possibility that numbers are lower because of the Stay-at-Home Order.  Even if that is not the case, that numbers are lower than predicted certainly does not support a conclusion that the Stay-at-Home Order has no real or substantial relation to public health.

Six v. Newsom, 462 F. Supp. 3d 1060, 1068–69 (C.D. Cal. 2020).

Likewise, restrictions designed to discourage tourism and thus limit the number of people who may come into contact with Tillamook County residents has a legitimate relation to the protection of public health.   The record, read in a light most favorable to plaintiffs, demonstrates defendant could have had a legitimate reason for imposing the restrictions.   Accordingly, defendant is entitled to summary judgment in its favor on plaintiffs' substantive due process claim.

C.    Procedural Due Process

Plaintiffs assert their licenses to operate their lodging facilities are constitutionally protected property and cannot be taken away without procedural due process.  However, the County undertook no action to take away plaintiffs' license to operate their lodging facilities.   It is unclear if plaintiffs have a property right to take all reservations sought for lodging or at least to a property right to honor those reservations made before the County tourism restrictions went into effect preventing plaintiffs from fulfilling them.

Page 9 -OPINION & ORDER

The Ninth Circuit has determined, with respect to the number of flights allocated to a licensed air carrier at an airport, even though not subject to an absolute entitlement but which nevertheless is essential to pursuit of a livelihood, is not to be taken away without the procedural due process required by the Fourteenth Amendment. Alaska Airlines, Inc. v. City of Long Beach, 951 F.2d 977, 986 (9th Cir. 1991). However, the reduction to allotments in Alaska Airlines concerned the ability of an airport manager to unilaterally impose such restrictions after determining a carrier exceeds a certain cumulative noise level, i.e., a revocation for cause. Here, the County did not impose restrictions to plaintiffs' reservations for cause, but rather instituted restrictions to all lodging facilities pursuant to its legislative authority. When the action complained of is legislative in nature, due process is satisfied when the legislative body performs its responsibilities in the normal manner prescribed by law. Halverson v. Skagit Cty., 42 F.3d 1257, 1260 (9th Cir. 1994).

To determine when a particular governmental action is legislative in nature, courts focus on the character of the action, rather than its label. Harris v. County of Riverside, 904 F.2d 497, 501 (9th Cir.1990). Thus, governmental decisions which affect large areas and are not directed at one or a few individuals do not give rise to the constitutional procedural due process requirements of individual notice and hearing, rather general notice as provided by law is sufficient. Halverson 42 F.3d at 1261. Plaintiffs argue that because the restrictions affected only 37 lodging facilities and not the entire population of Tillamook County, even though other businesses could conceivably still serve tourists, the County was required to provide plaintiffs with individual notice and a hearing.

Plaintiffs' reliance on Harris for their asserted right to individual notice and a hearing is

misplaced.   In Harris, the County of Riverside amended its General Plan, after published notice and a public hearing, and redesignated a small area of land affecting virtually only one property owner other than the developer who requested the change.   Accordingly, Harris determined due process required individualized notice.   Harris, 904 F.2d at 504.

In this case, many different lodging facilities spread throughout the County were impacted.   Moreover, the record demonstrates at least one plaintiff did receive individual notice the day before the resolution went into effect.   See Declaration of Jennifer Mankins (ECF 24) at Exs. 4, 6.   Throughout the time period the restrictions were in place, plaintiffs were given an opportunity to be heard. Declaration of Elizabeth Jones, Exs. 5-8 (ECF 17-1).   Indeed, a member of the Mankins Family, LLC, Samuel Mankins, notes that he personally participated in many of Tillamook County's meetings concerning the resolution at issue.   Declaration of Samuel Mankins (ECF 25) at ¶ 8.

Legislative decisions not targeting one or a few individuals comports with due process when the legislative body performs its responsibilities in the normal manner prescribed by law. Halverson, 42 F.3d at 1260.   Plaintiffs rights are thus "protected in the only way that they can be in a complex society, by their power, immediate or remote, over those who make the rule." Id. So long as the County's elected officials discharged their legislative responsibilities in the manner prescribed by law, that is all the process that is required.   Id.   The County acted pursuant to its power to pass resolutions to prevent, minimize, respond to, or recover from an emergency.   Or. Rev. Stat. § 401.309(1)(2).   Thus, the County's enactment of the restrictions were lawful legislative acts.   See Samson v. City of Bainbridge Island, 683 F.3d 1051, 1060 (9th Cir. 2012) (Council's enactment of various moratorium ordinances were lawful legislative acts

because the ordinances applied generally to all owners of shoreline property and were passed according to ordinary protocols). Accordingly, defendant is entitled to summary judgment on plaintiffs' procedural due process claim.

<u>CONCLUSION</u>

Defendant's motion for summary judgment (ECF <u>14</u>) is granted in part and denied in part.

DATED this 7th day of December, 2020.

_____/s/ Jolie A. Russo_____
JOLIE A. RUSSO
United States Magistrate Judge

Page 12 - OPINION & ORDER